CASE 56.—ACTION BY A. S. MUSSELLAM AGAINST THE CIN-
CINNATI, N. O. & T. P. Ry. Co. AND ANOTHER FOR
LOST FREIGHT.—September 26.

# Mussellam v. Cincinnati, N. O. & T. P. Ry. Co.

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for defendants.    Plaintiff appeals.—Re-
versed.

1.  Carriers—Receipt of Freight—Conclusiveness.—A receipt by a
    carrier for freight, though not conclusive, creates a presump-
    tion that it received the freight directed therein, and the
    burden is on it to show the contrary.
2.  Trial — Instructions — Form. — The court should not instruct
    that the burden of proof is on one of the parties, or that the
    presumption of law is against him; but the instructions should
    be so framed as to indicate the burden of proof, without
    specially referring to it.
3.  Carriers—Loss of Freight—Evidence—Instructions. — Where,
    in an action for loss of freight, the shipper introduced in evi-
    dence the receipt of the initial carrier, the court should
    charge that the jury should find for plaintiff against the ini-
    tial carrier, unless they believed that the shipper had not de-
    liver the freight to it; and that they should find for him
    against the connecting carrier, unless they believed that the
    initial carrier had not delivered the freight to the connecting
    carrier.
4.  Trial—Question for Jury—Effect of Evidence.—Where, in an
    action against the initial and connecting carriers for loss of
    freight, it was shown that the connecting carrier receipted
    for seven boxes and made a written acknowledgment that one
    box was missing, the credibility of the testimony explaining
    away the receipt and the acknowledgment was for the jury.
5.  Carriers—Question for Jury.—In an action against the initial

and connecting carrier for loss of freight, held, that the ques-
tions whether the freight was delivered to the initial carrier,
and, if it was, whether it was lost by it, or whether it was lost
by the connecting carrier, were for the jury.

6. Evidence—Statements by Agents—Admissibility.—The state-
ments of an agent or a carrier, who is its representative to
deliver freight, that a part of the freight of a shipper was
missing, and that it would be along in a few days, were comp-
petent against the carrier.

7. Carriers—Loss of Freight—Actions—Evidence.—In an action
against a carrier for loss of freight, the bill of lading received
by the shipper and the waybills which went with the freight
were competent evidence against the carrier, though not con-
clusive.

8. Trial—Question for Jury.—The credibility of evidence in an
action against a carrier for loss of freight, which explains
the bill of lading received by the shipper and the waybills
which went with the freight is for the jury.

9. Evidence—Notice to Produce Secondary Evidence.—Where a
paper is in the possession of a party, the adverse party should
before trial notify the party to produce it, or procure a rule
for its production, and, where the paper is not then produced,
or it is shown to be lost, secondary evidence of its contents
is admissible.

10. Same—Similar Transactions.—Where, in an action against a
carrier for loss of freight, the carrier showed that the goods
could not have been put in the box delivered to it, evidence
that the shipper had packed goods of the same description as
those in controversy in a similar box was admissible.

11. Property—Evidence of Ownership.—In an action against a
carrier for loss of freight, the testimony of a witness that he
saw the shipper in possession of goods similar to those al-
leged to have been lost, is inadmissible.

12. Witnesses—Credibility.—A party testifying in his own behalf
should be permitted to state where he has lived and what
business he has followed, so as to give the jury a better idea
of the weight to be attached to his evidnece.

13. Trial—Evidence—Rebuttal.—Where, in an action against a
carrier for loss of freight, a drayman, who took goods of the
shipper to the carrier, testified that only six boxes of freight
were taken out at the station, and that the shipper told him
that he would take the seventh box with his trunk as bag-
gage, it was competent for the shipper to contradict the dray-
man.

14. Carriers—Actions—Evidence.—In an action against the initial and connecting carriers for loss of freight, evidence that the waybill, made at the place where the goods were delivered to the connecting carrier, was made out from the waybill which accompanied the car, and not from an inspection of the contents of the car, which was sealed, was admissible to explain how it happened that the connecting carrier receipted for the freight.

15. Same.—In an action against a carrier for loss of freight, evidence of the circumstances of the giving of a receipt by the carrier for the freight was admissible to support the defense that the freight had not been delivered to it.

16. Appeal—Granting New Trial—Discretion.—The discretion of the circuit court in granting a new trial will not be interfered with unless palpably abused.

ROBERT HARDING for appellant.

E. V. PURYEAR and GREENE & VANWINKLE of counsel.

GROUNDS FOR REVERSAL.

We respectfully ask a reversal of the lower court upon the following grounds:

1. Because of the error of the trial judge in setting aside the verdict of the jury and the judgment thereon for $900.00, and granting appellees a new trial.

2. Because of the trial judge's error in the second trial in peremptorily instructing the jury to find a verdict for Cincinnati, New Orleans & Texas Pacific Railway Company.

3. Because of the trial judge's error in withdrawing from the consideration of the jury the receipt given appellant by the Cincinnati, New Orleans & Texas Pacific Railway Company, showing the Southern Railway Company received payment for carrying seven boxes of goods from Knoxville to Harriman Junction.

4. Because of the error of the trial judge in excluding competent testimony from the jury on the second trial of the case.

CHARLES H. RHODES for appellee.

JOHN GALVIN of counsel.

There was never any proof on either trial of this case in the court below that any except the six boxes were ever delivered to the Cincinnati, New Orleans & Texas Pacific Railway Company by

the Southern Railway Company, and consequently the peremptory instruction by the court to the jury to find for the Cincinnati, New Orleans & Texas Pacific Railway Company was clearly correct, and the two questions of fact presented by the pleadings were submitted to the jury under instructions from the court below that are confessedly fair and impartial, and the jury having found those two facts in favor of appellee, the Southern Railway Company, we submit that the judgment of the court below should be affirmed for the reason that under the uniform rule prescribed by a long line of decisions by this court, It is strictly the province of the jury to decide the facts under proper instructions from the court, and that province will not be interferred with in any way by the court; and especially where the verdict is in accord with the overwhelming weight of the testimony.

Wherefore we respectfully but confidently ask that the judgment of the court below be affirmed.

### AUTHORITIES CITED.

Vol. 16 A. & E. Enc. of Law, pp. 516, 518, and authorities cited in notes; Clay v. Clay, 3 Met., 548; Keith v. Amende, 1 Bush, 455; Query v. White, 1 Bibb, 271; vol. 2 Ky. Digest, sec. 277, under head of evidence, p. 3191.

OPINION OF THE COURT BY JUDGE HOBSON.—Reversing.

In December, 1904, A. Mussellam delivered to the Southern Railway Company at Knoxville, Tenn., some boxes of oriental goods, to be shipped to himself at Danville, Ky. The railway company gave him a bill of lading for seven boxes, weighing 1,065 pounds. When the goods were delivered to him at Danville, there were only six boxes. The weight of these six boxes is not shown. The goods were carried by the Southern Railway from Knoxville to Harriman, and then delivered to the Cincinnati, New Orleans & Texas Pacific Railway, which took them to Lexington, and from Lexington they were shipped back to Danville. They did not reach Danville until January 10th.

He brought this suit against both railways to recover
for the loss of the seventh box, the contents of which
he valued at something over $1,800. The defense to
the action was in effect that only six boxes were in
fact delivered at Knoxville to the Southern Railway.
On the first trial of the case, the jury found for him,
fixing the damages at $900. The court granted a new
trial. On the second trial, the court gave a peremp-
tory instruction to the jury on all the evidence to find
for the Cincinnati, New Orleans & Texas Pacific Rail-
way Company, and, the case being submitted as to the
Southern Railway Company, the jury returned a ver-
dict in its favor. Judgment was entered on the ver-
dict, and the plaintiff appeals.

Mussellam, for a week before the shipping of the
goods, had been selling at auction at Knoxville goods
which he had brought there from St. Louis. The proof
for the defendant showed that he did not have at
Knoxville the goods which he charged were in the box
that was lost. It also showed that these goods could
not have been put into such a box, that, after the
auction was over, what goods he had left unsold were
packed into seven boxes, which were hauled by the
transfer wagon to the station. The driver of the wagon
said that, when he reached the station, only six boxes
were taken out of the wagon; Mussellam telling him
that he would take the other box with his trunk as
baggage. The agent who checked the boxes said there
were only six, weighing 1,065 pounds; that he placed
them in a Lexington car and sealed the car with the
Knoxville seal. The agent at Lexington testified that,
when the car reached him, the seal was unbroken;
that he opened the car, and there were only six boxes
in it, which he then had placed in the freight depot,
and afterward reshipped to Danville. On the other

hand, Mussellam testified that this box was not opened
at Knoxville, that it was delivered with the other six
to the railway company, and that it contained the
articles sued for, which the Knoxville witnesses knew
nothing about. He not only received a bill of lading
at Knoxville for seven boxes, but the waybill which
went with the car called for seven boxes. The Cincin-
nati New Orleans & Texas Pacific Railway receipted
to the Southern Railway for seven boxes, and sent a
similar waybill to Danville. The agent at Danville
receipted for the freight on seven boxes, weighing
1,065 pounds, "one box missing."

1. The rule is settled that a receipt is not conclusive
between the parties, but is only prima facie evidence
of what was received. The receipt given by the rail-
way companies for the freight specifying that there
were seven boxes created a presumption that they
received in fact seven boxes, and the burden of proof
is on them to show that only six boxes were in fact
received. They may show what was received, but,
unless they show to the contrary, the plaintiff is
entitled to recover upon his receipt. The instructions
which the court gave the jury do not conform to this
rule. The court under our practice should not tell
the jury that the burden of proof is upon one of the
parties, or that the presumption of law is against him;
but the instructions should be so framed as to indi-
cate the burden of proof without especially referring
to it. Under the instructions of the court, the jury
were directed to find for the plaintiff if they believed
from the evidence that he had delivered the box to
the Southern Railway. This placed the burden of
proof on him of showing that he had delivered the box,
while the receipt made out a prima facie case for him.
The court should have instructed the jury that they

should find for the plaintiff against the Southern Railway Company, unless they believed from the evidence that the plaintiff had not delivered the box to it; and that they should find for him against the Cincinnati, New Orleans & Texas Pacific Railway Company, unless they believed from the evidence that the Southern Railway Company had not delivered the box to the Cincinnati, New Orleans & Texas Pacific Railway.

2. The court should not have instructed the jury peremptorily to find for the Cincinnati, New Orleans & Texas Pacific Railway Company. It had in writing receipted for seven boxes. It had in writing acknowledged that one box was missing. While these writings were not conclusive upon it, they made out a prima facie case, and the credibility of the testimony explaining them away was for the jury. The agent at Lexington received no waybill for these goods. The agent at Danville seems to have received two waybills which did not agree. The delay in getting the goods from Lexington to Danville is not fully explained. It is the province of the jury to determine from all the evidence whether the box was delivered to the Southern Railway at Knoxville, and, if it was, whether it was lost there or after the car reached the Cincinnati, New Orleans & Texas Pacific Railway Company.

3. The plaintiff offered to read in evidence the writing given him at Danville, and to prove that the agent there told him that one box was missing, and that it would be along in a few days. The agent was the representative of the railway company to deliver the freight, and what he said in delivering it, or as an excuse for not delivering it, is competent against the company. The weight of the evidence is for the jury. It should not have been excluded by the court. The plaintiff should also be allowed to read to the jury the

bill of lading received by him at Knoxville and the waybills which went with the freight. The writings are written documents made by the defendants, and are competent against them. While they are not conclusive, the credibility of the evidence explaining them on behalf of the defendants is for the jury. When a paper is shown to be in the possession of the defendant, the plaintiff should, before the trial begins, notify the defendant to produce it on the trial, or procure a rule for the production of the paper. If the paper is not then produced, or is shown to be lost, secondary evidence of its contents may be given. In this case there was no notice before the trial for the production of the papers, and no rule, so the court did not err in refusing to require the production of the papers by the defendant.

4. The plaintiff testified that the articles in the box were rugs of certain sorts and dimensions, of good quality and of certain value. He then introduced two witnesses who had dealt in such rugs, and testified they knew their value, and proposed to prove by them that rugs of the size and sort described by plaintiff of good quality were of the value claimed. The evidence was rejected, on the ground that the witnesses had not seen the rugs and did not know their quality. The dimensions, description, and quality of the rugs being shown, it still remained to show their value. One witness may show the dimensions of the rugs, another their quality, a third their description, and a fourth, who is an expert, may testify what the things thus described are worth in the market. Expert testimony is not confined to opinions as to what the witness has seen, but is oftener given as to matters described to the witness. If expert testimony as to the value of lost articles were confined to persons who had seen

them, the jury might be often misled, for the persons who have seen them may be much mistaken as to their value, although entirely accurate as to what the things are. The evidence here offered, while not of great weight as the case stood, should have been admitted, as it served to establish a material fact in the case. The plaintiff should also have been allowed to prove that the goods he claimed could be packed in a box of the size of the one in controversy. The defendants had given evidence that the goods could not be put in such a box, and he should have been allowed to prove by himself and two other witnesses that he had packed in their presence goods of the same description and amount as those in controversy in a similar box.

5. The testimony of George Alexander and wife was properly rejected. They only testified to seeing the plaintiff at the St. Louis fair in possession of oriental goods similar to those said to be in the box, but they do not show that he then owned the goods. On the contrary, their evidence shows he was only a salesman selling the goods for another person. The law requires the best evidence, and the mere fact that he was in possession of such goods at St. Louis proves nothing material to the case.

6. Mussellam should have been allowed, while testifying in chief, to state where he had lived, and what business he had followed, so as to give the jury a better idea of who the witness was, and what weight should be attached to the opinion evidence which he gave. He should also have been allowed, while on the stand in rebuttal, to tell what took place between him and the driver when the goods were taken to the station, in so far as the driver had testified to any statements then made by him. He offered to testify that he did not tell the driver to leave one of the boxes

in the wagon, and, as the driver had testified to this for the defendant, he should have been allowed to testify that he did not make the statement attributed to him by the driver.

7. The defendants should be allowed to prove that, when a car was shipped through, the waybill to Harriman was made out from the waybill which accompanies the car, and not from an inspection of the contents of the car where the car was sealed. This evidence would serve to explain how it was that the Cincinnati, New Orleans & Texas Pacific Railway receipted for seven boxes. In the same manner, proof was properly allowed as to how and under what circumstances the receipt for seven boxes was made out at Knoxville.

8. The weight of the evidence sustains the verdict of the jury in favor of the defendant; but, in view of the whole record, we conclude that the plaintiff did not have a fair trial before the jury on the merits of his case, and that, as he is entitled to a jury trial and a fair trial, a new trial should be awarded. We see no reason for disturbing the action of the circuit court in granting a new trial after the first trial of the case. Circuit courts have a wide discretion as to new trials, and much greater effect is given to the order of the circuit court granting a new trial than to one refusing a new trial, for the reason that he is upon the ground, and that, when he concludes that the ends of justice require a new trial, this court will not interfere with his discretion, unless it is palpably abused.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.

Petition for rehearing by appellee overruled.