Vol. 131.]     JANUARY TERM, 1909.          363

Chesapeake & Ohio Ry. Co. v. Grigsby—Same v. Grigsby Bros. .

CASE 40.—TWO ACTIONS, ONE BY B. F. GRIGSBY AND ONE
BY GRIGSBY BROS., AGAINST THE CHESAPEAKE
& OHIO RAILWAY CO. FOR KILLING STOCK.—
January 15.

# Chesapeake & Ohio Ry. Co. v. Grigsby
## Same v. Grigsby Bros.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for Grigsby Bros. affirmed and that in
favor of B. F. Grigsby reversed.

1. Railroads—Injuries to Animals on Track—Actions—Questions
   for Jury.—Evidence in actions against a railroad company
   for the killing and injuring of catttle held not to require a
   peremptory instruction for the company.
2. Presumptions and Burden of Proof.—Though, under the
   statute, the killing or injuring of stock by a railroad train
   is presumed to have been negligent, and the burden of
   showing that it was not is upon the railroad company, it is
   relieved of that presumption where it shows by those in
   charge of the train that they were the only eyewitnesses and
   used ordinary care.
3  Injuries to Animals on Track—Questions for Jury.—Where,
   notwithstanding the evidence of those in charge of a train
   that ordinary care was used to avoid the killing or injuring
   of stock. other witnesses testify that they were negligent,
   or there are facts and circumstances which conduce to show
   such negligence, the question of negligence is for the jury.
4. Actions—Instructions.—Where, in an action against a railroad
   company for the killing of five cattle, the answer admitted
   the killing of but four, and an issue was made by the plead-
   ings and proof as to whether the fifth had been killed by
   the train, it was error to instruct that plaintiff, if entitled
   to recover at all, should be compensated for the loss of five
   cattle.
5  Actions—Instructions.—In an action against a railroad com-

pany for killing and injuring stock, it is better to use, in the instruction as to the measure of damages, the words "reasonable market value," instead of the single word "value."

6. Trial—Instructions—Construction of Charge ˌs a Whole.— Where the instruction as to damages in an action against a railroad company for the killing and injuring of stock was correct as far as it went, and the measure of damages was correctly stated in an instruction in another action tried at the same time the jury could not have been misled by such former instruction.

7. Trial—Misconduct of Counsel—Improper Questions.—Though plaintiffs' counsel, in actions against a railroad company for the killing and injuring of stock, pressed the asking of incompetent questions as to previous killings of stock by the railroad company at the same place further than was proper in view of the jury's presence, and indulged in a colloquy with the court as to the dates of such previous killings, it cannot be said that his misconduct was such as to have influenced the verdict, where the court sustained the objections made by defendant and refused to let the witness answer.

SHELBY & SHELBY for appellant.

POINTS AND AUTHORITIES.

1. The verdict of the jury was flagrantly contrary to the evidence.

2. The court erred in the B. T. Grigsby case in assuming that five cattle belonging to that plaintiff had been killed by the train, when it had been denied by the defendant that more than four had been killed by the train, and the evidence showed that such was the fact.

3. The measure of damages prescribed in instruction No. 5 in the Grigsby Bros. case was incorrect.

4. The court erred in instruction No. 3 given in both cases in refusing to qualify the duty of lookout by a statement of the paramount obligation of the engineer to his train and the persons and property upon it. (L. & F. R. R. Co. v. Milton, 14 B. M. 75; L. & F. R. R. Co. v. Ballard, 2 Met. 179 and 181.)

5. The court erred in instruction No. 3 in imposing upon the defendant any duty to look out for trespassing cattle, or to discover their presence. (Cr'ticism of dictum in L. & N. R. R. Co. v. Logsdon, 118 Ky. 606 and 607; L. & F. R. R. Co v. Milton, 14 B. M. 75; L. & F. R. R. Co. v. Ballard, 2 Met. 181 and 183;

Chesapeake & Ohio Ry. Co. v. Grigsby—Same v. Grigsby Bros.

O'Bannon v. L C. & L. R. R. Co., 8 Bush 351; K. C. R. R. Co. v. Lebus, 14 Bush 522 and 523; K. C. R. R. Co. v. Talbott, 78 Ky. 621; Woodward v. C. M. & St. P. Ry. Co., 145 Fed. 579.)

6. Counsel for plaintiff was guilty of such misconduct in putting incompetent questions and making improper avowals as to require a reversal. (Shipp v. Commonwealth, 99 S. W. 945, 951, 30 Ky. Law Rep. 904, 912, Marcum v. Hargis, 104 S. W. 694, 31 Ky. Law Rep. 1117; L. & N. R. R. Co. v. Reaume, 107 S. W. 290; Murphy's Executor v. Hoagland, 107 S. W. 305; Spencer v. Commonwealth, 107 S. W. 344.)

KIMBALL & HUNTER and MAURY KEMPER for appellees.

### SYNOPSIS OF ARGUMENT.

1. The verdict sustained by weight of the evidence.

2. The instruction No. 1 in the B. T. Grigsby case, taken in connection with the other instructions, correctly state the law applicable to the case, and if any error in the instructions, in no sense prejudicial to appellant. (Branham v. Berry, 4 Ky. Law Rep. 357; North's Admr. v. Central R. R. Co., 9 Ky. Law Rep. 480; Arnold v. Browning, 12 Ky. Law Rep. 368; Wiedman v. Lyon, 13 Ky. Law Rep. 590.)

3. Instruction No. 5 of the Grigsby Brothers case correctly states the law as to the measure of damages. (Louisville & Frankfort R. R. Co. v. Ballard, 2 Met. 180; Troutwine v. L. & N. R. R. Co., 32 Ky. Law Rep. 5.)

4. The instruction as to the duty of lookout by the railroad company to stray cattle, correctly states the law of the state. (L. & F. R. R. Co. v. Ballard, 2 Met. 180; L. & N. R. R. Co. v. Logsdon, 118 Ky. 606; Troutwine v. L. & N. R. R. Co., 32 Ky. Law Rep. 606; Ky. C. R. R. Co. v. Lebus, 14 B. 518; L. & N. R. R. Co. v. Kice, 22 Ky. Law Rep. 1462; I. C. R. R. Co. v. Gholson, 23 Ky. Law Rep. 2211.)

5. The alleged misconduct of counsel for appellees complained of, if improper, did not affect the substantial rights of the appellant; and, on that account, is not ground for reversal. (Branham v. Berry, 4 Ky. Law Rep. 357; North's Admr. v. Central R. R. Co., 9 Ky. Law Rep. 480; Arnold v. Browning, 12 Ky. Law Rep. 142; Dowling v. McNelly, 13 Ky. Law Rep. 368; Wiedman v. Lyon, 13 Ky. Law Rep. 590.)

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing.

By these two actions against the appellant, Chesapeake & Ohio Railway Company, the one brought by the appellee B. F. Grigsby, and the other by appellees Grigsby Bros., damages were sought to be recovered of it for the killing of certain cattle and crippling of others, alleged to have resulted from the negligence of appellant's servants in running a train upon and over them at Walnut Hill station, in Fayette county; the train being a heavy one of 21 cars, drawn by two engines and used in transporting a circus company, its employes, stock, menagerie, and paraphernalia. In the case of appellee B. F. Grigsby it was claimed in the petition that five of his cattle were killed and ten crippled by the train. The appellant's answer in that case admitted the killing of four of the cattle and the crippling of ten by the train, but denied the killing of the fifth, likewise the value placed by the petition upon each of the four killed, the damages alleged for the injuries inflicted upon those crippled, and also the negligence complained of. In the case of the appellees Grigsby Bros. it was claimed in the petition that one of their steers was killed and three others crippled by appellant's train. This was admitted by the answer; but it denied that the death of the one steer, or crippling of the three, or any, of them, was caused by the negligence of appellant's servants in charge of the train, and also denied the value placed by the petition upon the steer killed and the damages claimed for the injuries inflicted upon the three that were crippled. By agreement of the parties, entered of record, the two cases were tried together and be-

fore the same jury. The trial resulted in a verdict and judgment in behalf of the appellee B. F. Grigsby for $670 damages, and for the appellees Grigsby Bros. for $220 damages. Appellant filed in each case a motion and grounds for a new trial; but each motion was overruled, and it has appealed. The appeals have been submitted together, and this opinion will apply to both cases.

Counsel for appellant insists that a peremptory instruction requiring the jury to find for appellant in each case should have been granted. We cannot sustain this contention. It appears from the record that appellees B. F. Grigsby and Grigsby Bros. were together grazing their cattle upon land near Walnut Hill station which they had leased of another; that the cattle, having escaped at night from the leased premises, went on the uninclosed lot of appellant upon which the Walnut Hill station is located, and were evidently grazing along the appellant's right of way opposite the station when the train, which was an extra one, not running on scheduled time, came along about midnight and collided with such of the cattle as were killed or injured. According to the testimony of the crew in charge of the train it was running at a speed of 25 miles an hour when the collision occurred and the engine whistle was blown for the crossing made by the intersection of the Walnut Hill turnpike and railroad near the station. The engineer testified that the headlight upon the engine was in good condition; that he was looking ahead as he approached the station; that he could not and did not see the cattle until the train got in 30 or 40 feet of them, and that as soon as he saw the cattle he closed the throttle, thereby shutting off the steam, and applied the automatic air brakes, as is usual in an

emergency; that the train could not be stopped until it had plowed through the cattle, torn out the cattle guard, and passed the station about 300 yards. All the train crew further testified that it had rained that night at Mt. Sterling, from which the train came, and that the night was misty, with fog along various parts of the railroad, and that the fog obstructed the view of the engineer and fireman as the train approached the appellees' cattle. Noyes, in charge of United States Weather Bureau at Lexington, six miles west of Walnut Hill, testifies that under the atmospheric conditions then obtaining it was probable that fog prevailed in various localities in the vicinity of Lexington during the night of the collision of appellant's train with appellee's cattle. Although unable to produce any eyewitnesses to the accident, there was evidence in appellees' behalf which conduced to prove that, for a distance of nearly two miles in approaching Walnut Hill station from Mt. Sterling, appellant's railroad track is practically level; that on the night of the accident there was no fog at Walnut Hill station, or other impediment, that could have obstructed the engineer's view as the train approached the place of the accident; and that the exercise of ordinary care upon his part in maintaining a proper lookout ahead of the train on that occasion would have enabled him to discover the presence of appellees' cattle upon the railroad track, and consequent peril, in time to have frightened them out of the way of the train by the use of the customary alarm whistle, or to have stopped the train before striking them. S. R. Finney, a material witness for appellees, who saw the train after it stopped, immediately following its collision with the cattle, and three-quarters of an hour later went to the place of the accident

and drove the cattle and such of the injured as could travel to a place of safety, testified that there had been no rain at Walnut Hill station that day or night, and that there was no fog there at the time he saw the train.

In view of the foregoing facts and circumstances, the refusal of the trial court to give the peremptory instruction was not error, as it cannot be said there was no evidence to authorize a recovery. We need not express an opinion as to whether or not it was of less or greater weight than the evidence furnished by appellant's witnesses. That matter the jury had a right to determine, and upon the record presented we are not at liberty to disturb the verdicts. While, under the statute, the killing or injuring of stock by a railroad train is presumed to have been caused by the negligence of those in charge of the train and the burden of showing that such was not the case rests upon the railroad company, it is relieved of that presumption when it proves by its servants in charge of the train that they were the only eye-witnesses to the accident, and that they used ordinary care to avoid the killing or injury complained of; but when, notwithstanding the testimony of those in charge of the train that such care was used, other witnesses testify that they were negligent, or, as in the instant cases, there are facts and circumstances, disclosed by the evidence which conduce to prove such negligence, it becomes the duty of the jury to pass upon the question at issue from all the evidence. I C. R. R. Co. v. Gholson, 60 S. W. 1022, 23 Ky. Law Rep. 2211; L. & N. R. R. Co. v. Moore, 84 S. W. 1144, 27 Ky. Law Rep. 293; L. & N. R. R. Co. v. Rhoads, 90 S. W. 219, 28 Ky. Law Rep. 692.

It is also insisted for appellant that the jury were

erroneously instructed in each of the cases under con-
sideration. This contention we must sustain as to the
instructions given by the trial court in the case of the
appellee, B. F. Grigsby, against the appellant, as each
of them contains one and the same fatal error; that is,
it is assumed in each, and the jury were so advised,
that five of the appellee B. F. Grigsby's steers were
killed by the train, and, if entitled to recover at all,
that he should be compensated for the loss of five
steers, whereas the answer of appellant admitted the
killing of but four of his steers by the train, and
expressly denied the killing of the fifth one. Accord-
ing to the evidence six steers were found dead. It is
admitted by all the parties that one of the six be-
longed to the appellees Grigsby Bros. The evidence
further showed the killing by the train of four of the
appellee B. F. Grigsby's steers, as admitted by appel-
lant's answer; but on the question of whether the
fifth steer was killed by the train, there was very con-
siderable evidence to support the denial of appel-
lant's answer. The dead body of the fifth steer was
not discovered with those of the other steers admitted
to have been killed by the train, but was found in a
well, situated in a pasture west of the cattle guard
and 30 steps from and south of the railroad track.
The distance of 30 steps was testified to by Dunaway,
appellant's section foreman, who seems to be uncon-
tradicted. If 30 steps, the well must be about 70 or
80 feet from the railroad track, as the average man
will move a distance of 2½ feet with each step made.
With the well 75 feet from the railroad track, it is
highly improbable, not to say unbelievable, that the
steer found in it after the killing and crippling of the
other cattle was or could have been knocked or thrown
that distance by the force of the train, no matter at

what speed it was moving. Moreover, Dunnaway, the section foreman, who seemed to be better informed upon the subject than any other witness, further testified that there was no evidence furnished by the carcass of the steer found in the well which indicated that it had been struck by the train, or killed in any other way than by wandering or running from the railroad and falling accidentally into the well. There was also some evidence in behalf of appellee B. F. Grigsby, though hardly of a convincing character, to the effect that the steer found in the well had been struck by the train and injured, and thereby caused to fall therein. It is manifest, therefore, that there was an issue made by the pleadings and proof as to whether the steer found in the well was or not killed by the train; and, this being true, it was an injustice to the appellant for the court to arbitrarily take this issue from the jury, and, by the assumption contained in the instructions, compel the jury, if they found for the appellee B. F. Grigsby at all, to allow him damages for the death of the fifth steer, without regard to whether it was or not killed by the negligence of appellant's servants in charge of the train. Aside from the error referred to, we think the instructions in the B. F. Grigsby case, while inaptly expressed, substantially correct. But as there must be a retrial of that case we think it would be better to use in the instruction containing the measure of damages, instead of the single word "value," the words "reasonable market value."

The instructions in the case of appellees Grigsby Bros. against appellant were substantially correct, though they, too, might have been more aptly expressed, and the one on the subject of damages should have defined the measure of recovery; but we do not

think it was prejudicial in the form given. The instruction was correct as fair as it went, and in view of the fact that the measure of damages was correctly stated in the instruction on that subject in the B. F. Grigsby case, and the two cases were argued together, and the instructions in both cases considered by the jury at the same time, we do not think they could have been misled by the one in the case of Grigsby Bros. on the question of damages, and certainly the verdict in the latter case does not show any misunderstanding on the part of the jury with respect to that feature of the law.

It is further contended by counsel for appellant that one of the counsel for appellees was guilty of misconduct during the trial, in that he persisted, notwithstanding the objection of appellant's counsel and the adverse rulings of the court, in asking, in the hearing of the jury, of a witness certain incompetent questions in respect to previous killing of stock by appellant's trains at the place where the appellees' cattle were killed and crippled, and also in indulging before the jury in a colloquy with the court as to the dates of such previous killings of stock. The questions referred to were incompetent, and the facts they were intended to elicit would also have been incompetent; but as the court in the hearing of the jury sustained the objections made to them by appellant's counsel, and refused to let the witness answer them, we are unable to see that appellant's rights were in any way prejudiced by what took place. Appellee's counsel, in view of the presence of the jury, pressed the asking of incompetent questions further than was proper, and also erred in discussing the matter of whether they were or not competent; but

it can not be said that his misconduct was such as to have influenced the verdict of the jury.

For the reasons given, the judgment against the appellant in favor of appellees Grigsby Bros. is affirmed, but that recovered against appellant by the appellee B. F. Grigsby is reversed, and remanded for a new trial consistent with this opinion.