CASE 93.—ACTION BY COLUMBUS BYRD AGAINST THE CEN-
TRAL KENTUCKY TRACTION COMPANY.—Febru-
ary 11, 1910.

# Byrd v. Central Ky. Traction Co.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Af-
firmed.

1. Appeal and Error—Presumptions—Instructions.—Where a
verdict has been set aside and a new trial had, and but one
set of instructions appeared in the record, in the absence of
a showing to the contrary, the court on appeal must assume
that they were the only instructions given on either trial.

2. Railroads—Collision with Animal—Evidence.—In an action
against a railroad company for killing a horse, where the
evidence showed that the night was dark and stormy, testi-
mony of two witnesses, who on a later night observed
the passing of one of the defendant's cars at the place of
collision, that the headlight enabled them to see a tin can
which they had placed on the track at a distance of 300
feet, was without substantial weight or effect; it not being
made to appear that the weather conditions were such as
obtained on the night of the collision.

3. Railroads—Killing Stock—Presumption of Negligence—Where
stock is killed by a railroad train or electric interurban car,
the statute raises a presumption of negligence; but this may
be overcome by satisfactory and consistent proof that the
killing could not have been avoided by the exercise of ordi-
nary care.

4. Railroads—Killing Stock—Ordinary Care—Evidence.—Where
the uncontradicted and unimpeachable testimony of the com-
pany's servants, operating a train or electric car, shows that
the killing of live stock could not have been avoided by
the exercise of ordinary care, it is not proper for the jury
to find otherwise.

Byrd v. Central Ky. Traction Co.

5. Railroads—Killing Animal on Track—Evidence—Sufficiency.
—In an action against a railroad company for killing a horse, evidence held insufficient to support a verdict for plaintiff.

6. Appeal and Error—Granting New Trial—Discretion.—The discretion of the circuit court in setting aside a verdict and granting a new trial will not be interfered with, unless abused.

7. Presumption and Error—Record—Presumptions.—Where a verdict had been set aside and a new trial had, and the evidence on the last trial was not in the record, the court on appeal must take it for granted that the evidence authorized the verdict.

FOREMAN & FOREMAN for appellant.

GEORGE C. WEBB, ALLEN & DUNCAN and STOLL & BUSH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant sued appellee in the court below for $200, the alleged value of a horse, crippled to such an extent that he had to be shot, from a collision with one of appellee's interurban cars, alleged to have been caused by the negligence of its servants in charge of the car. There were two trials of the case, the first resulting in a verdict in appellant's favor for $150; but this verdict was set aside, and a new trial granted appellee, to which appellant excepted. On the second trial the jury returned a verdict for appellee, upon which judgment was entered dismissing the action at appellant's cost. The latter was refused a new trial, and has appealed.

The evidence on the second trial is not in the record; but it seems to be conceded that it did not materially differ from that introduced on the first, which does appear in the record. The same instructions seem to have been given on both trials.

At any rate, we find but one set of instructions in the record, and, in the absence of a showing to the contrary, we must assume that they were the only instructions given in the case on either trial.

Appellant's chief complaint is that the circuit court erred in granting appellee a new trial after the return of the verdict in his favor on the first trial, and he now insists that the judgment upon the last verdict should be reversed, and the circuit court directed to enter a judgment in his behalf upon the verdict for $150 returned on the first trial, and costs. We cannot grant this request. In our opinion the first verdict was against the weight of the evidence. The horse was struck by appellee's car about 8:30 o'clock at night as it was running down grade on schedule time from Lexington to Versailles, at a speed of about 18 miles an hour. It was quite dark and raining very hard, the air was full of vapor, and the water running in streams down the glass of the vestibule in front of the motorman, as well as upon the glass in front of the headlight which greatly obstructed the view of the motorman and prevented him from seeing the usual distance in front of the car. Somewhat more than 100 feet before the car reached the point where the horse was standing there was a curve in the railroad track, which prevented the headlight from being thrown upon the point of collision until the car had about passed the curve. Just before reaching the curve the car gave the usual curve signal, or whistle, and when it reached a point from which the motorman could see, and did in fact discover, the horse, the car was within 120 feet of the animal. The motorman was keeping a careful lookout ahead of him, and upon discovering the horse he at once applied the air brakes, the quick-

est and best appliance for stopping the car; but, finding that this would not stop the car in time to prevent its striking the horse, he immediately applied the reverse current, which is done by cutting off the current and reversing the machinery of the car, and using the current to run it in the opposite direction. But neither the application of the air brakes nor reversal of the electric current did, or could, prevent the car from colliding with the horse, although they stopped it at a point less than its length beyond where the horse had been standing.

The foregoing facts were established by the testimony of the motorman and conductor, and while the 20 passengers in the car were not in a position to see the horse before or at the time of the collision, such of them as were required to testify corroborated the motorman and conductor as to the darkness, rainfall, and other conditions that so greatly obstructed the vision of the motorman and prevented the headlight from illuminating the railroad track ahead of the car. These witnesses also agreed with the motorman and conductor as to the rate of speed of the car and the manner in which it was suddenly stopped. The only testimony contradictory of that of appellee's witnesses was that of two persons, who on another and later night observed the passing of one of appellee's cars at the place of collision, and claimed to have discovered that its headlight enabled them to see at a distance of 300 feet a tin can which they had placed on the railroad track at the point where the car collided with appellant's horse.

The purpose of this testimony was to show that the motorman could and must have seen the horse when 300 feet from him, and, if so, that the car could have

been stopped before striking him. It was not made to appear, however, that the weather conditions were such as obtained on the night of the collision, and, if not, this testimony, if, under the circumstances, competent at all, was without substantial weight or effect. In the case of Early's Adm'r v. Louisville, Henderson & St. Louis Railway, 115 Ky. 21 72 S. W. 350, 24 Ky. Law Rep. 1810, this court, in considering similar tests, said: ''We do not attribute to the tests made by some of the witnesses as to the distances from which certain objects placed by them on the railroad track at the point of the accident could be seen, the importance attached to them by the appellant for we know that objects to which the attention is called, in advance, can more readily be seen and identified by a person stationed on the ground at a given distance than by one on a rapidly moving train, however keen his vision or constant his lookout ahead of the train. But these tests do not of themselves or in connection with the remainder of the evidence supply the facts from which negligence on the part of appellee may be inferred.''

From the fact that live stock is killed by a railroad train, or electric interurban car, the statute raises a presumption of negligence in the killing; but, when sued for negligently killing stock, a railroad company may overcome the statutory presumption of negligence by introducing satisfactory and consistent proof that the killing could not have been avoided by the exercise of ordinary care. And when this is done by the uncontradicted and unimpeached testimony of the company's servants operating the train, or electric car, it is not proper for the jury to find otherwise. McGhee, etc., Receivers, v. Guyn, 98 Ky. 210, 32 S. W. 615, 17 Ky. Law Rep. 794; Same

v. Gaines, 98 Ky. 182, 32 S. W. 602, 17 Ky. Law Rep.
748; Ill. Central R. R. Co. v. Gholson, 66 S. W. 1022,
23 Ky. Law Rep. 2213.

Except the unsatisfactory experiments of appel-
lants two witnesses with the tin can, we fail to find in
the record any evidence upon which to rest the ver-
dict of $150 returned for appellant by the jury on
the first trial; and as it should have had no effect
when weighed with the testimony furnished by ap-
pellee's motorman and conductor, to say nothing of
that of its other witnesses, which reasonably showed
that the collision of the car with the horse could not
have been avoided by the exercise of ordinary care
it is manifest that the circuit court, in setting aside
the first verdict and granting appellee a. new trial,
did not err. . But, even if less certain than we are
as to the weight and effect of the evidence on the
first trial, it would nevertheless be our duty to re-
fuse to reverse the judgment appealed from, on ac-
count of the circuit court's action in setting aside
the first verdict and granting a new trial, for we
could, in no view of the case, say that in so ruling
that court abused its discretion.

An excellent statement of the law on that
subject may be found in the opinion of this
court in the case of Pace v. Paducah Rail-
way & Light Co., 89 S. W. 105, 28 Ky. Law Rep.
279, wherein it is said: "It has been frequently
pointed out by this court that the discretion of the
trial court in granting a new trial, or refusing it, is
one that will not be disturbed by the appellate tribu-
nal, except it is made to appear that it has been
abused. The trial judge hears the evidence, as does
the jury, and, while the verdict is primarily that of
the jury, still the trial judge's concurrence is neces-

sary to its completeness as to the basis of the judg-
ment.  He likewise hears the witnesses, and has even
a better opportunity, perhaps, for the judging of
their demeanor and surroundings as liable to improp-
erly affect the result of the trial, than the jurors
themselves have.  It is peculiarly his business to see
that the trial is fair and that the jury is not im-
posed upon, either by prejudicial misconduct of par-
ties or counsel, or having produced to them evidence
under erroneous rules, as well as to see that they are
not subjected to other improper influences in reaching
their verdict.  For a breach of any of these matters,
as well as for his belief that the verdict is contrary to
the evidence, he may refuse to sanction it, and grant
a new trial.'' Mussellam v. C., N. O. & T. P. Ry. Co.,
126 Ky. 509, 104 S. W. 337, 31 Ky. Law Rep. 908;
Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 949;
Cochran v. Cochran, 93 S. W. 18, 29 Ky. Law Rep.
333; City of Louisville v. Johnson, 69 S. W. 803, 24
Ky. Law Rep. 685; Dieckman v. Weirick, 73 S. W.
1119, 24 Ky. Law Rep. 2340.

Manifestly, the last verdict should not be disturb-
ed, if, as it seems to be admitted by appellant, the
evidence on the last trial was as on the first; and
if the admission of its being the same were wanting,
as the evidence on the last trial is not contained in
the record, we must take it for granted that it author-
ized the verdict returned by the jury in appellee's
favor.

The instructions are free from prejudicial error,
and the pleadings support the judgment.

Wherefore the judgment is affirmed.