## Kentucky Traction & Terminal Company v. Wright.

(Decided February 15, 1916.)

### Appeal from Bourbon Circuit Court.

1. Railroads—Killing Stock—Question for Jury—Evidence.—In an action for damages for the killing of stock, evidence examined and held sufficient to take the case to the jury.
2. Trial—Instructions—Error.—In an action for damages for the killing of stock, an instruction telling the jury to find for the plaintiff unless they believe from the evidence that defendant's employes, in charge of the car, "used all means at their command," etc., to stop or slacken the speed of the car after the peril of the stock was discovered, or could have been discovered by the exercise of ordinary care, is erroneous, since the employes, under such circumstances, are required only to use ordinary care with the means at their command, etc.

3. Trial—Instruction.—Where, in an action for damages for the killing of stock, the motorman was the only person in a position to act, the duty of exercising ordinary care with the means at his command to avoid the injury should be confined to him alone.

STOLL & BUSH, R. C. STOLL and WALLACE MUIR for appellant.

DENIS DUNDON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action to recover damages to stock alleged to have been killed by the negligence of the defendant, plaintiff, C. J. Wright, recovered of the defendant, Kentucky Traction & Terminal Company, a verdict and judgment for $600.00. The defendant appeals.

Briefly stated, the facts are as follows: The stock, consisting of two horses and two mules, were struck and killed by an interurban car at 8:05 P. M., April 14, 1913. The accident occurred about a mile and a half from Paris on the pike leading from Lexington to Paris. Defendant's track at that point is on the right side of the turnpike and between the metal and fence of the adjacent landowner. The fence is about five feet from the track and the stock were grazing between the track and the fence. The motorman says that it was dark and he discovered the stock only about three hundred feet away and could not have discovered it any sooner. As soon as he saw the stock he shut off the current and applied the brakes, but was unable to stop the car, which was running about thirty or thirty-five miles an hour. After discovering the stock he did all he could to avoid the injury. He stated, however, that just as soon as he applied the brakes and shut off the current he struck the stock. After that he ran a few feet, when the car was derailed. The conductor and a passenger, who were in the same compartment with the motorman, corroborate the statements of the motorman. The evidence for plaintiff is to the effect that there was an unobstructed view of the track for a distance of about thirteen hundred feet, and that at night time a motorman, with the aid of an electric headlight, could see much further than three hundred feet. A passenger on the car stated that he was standing in the aisle and did not notice any checking in the speed of the car until the stock was

struck. Plaintiff's evidence also shows that after the stock was struck the car ran on the track for a distance of ninety feet, and after being derailed for a distance of about one hundred and fifty feet.

The statute makes the killing of stock *prima facie* negligent. It then devolves on the company to excuse itself by showing that the accident could not have been avoided by the exercise of ordinary care. When this is satisfactorily shown by uncontradicted and unimpeached testimony, the statutory presumption of negligence is overcome and it is proper to take the case from the jury. However, if the witnesses are impeached, or are contradicted by other witnesses, or by physical facts and circumstances, the presumption of negligence is not necessarily overcome, but the case should go to the jury. Byrd v. Central Kentucky Traction Company, 136 Ky., 766, 125 S. W., 174; C. & O. Ry. Co. v. Grigsby, 131 Ky., 363, 115 S. W., 237; C., N. O. & T. P. Ry. Co. v. Lowry, 122 S. W. 128. Here the stock were not at a considerable distance from the track and, therefore, not out of the motorman's range of vision. Between the track and the fence there was a distance of only five feet. The stock were in this space and, therefore, not only in dangerous proximity to the track, but within the natural range of the motorman's vision. The motorman himself says that he observed the stock when only about three hundred feet away. He immediately applied the brakes and shut off the current. Notwithstanding this statement, he admits that as soon as this was done he struck the stock. Even if it be conceded, therefore, that he could not have discovered the stock when further away than three hundred feet, yet he does not satisfactorily account for the delay in applying the brakes and shutting off the current. Not only so, but the defendant's witnesses are contradicted as to the distance the car ran after striking the stock, and by another witness who was standing in the aisle and who says that he did not notice any checking of the car until the stock were struck. There was also proof to the effect that the stock could have been seen for a distance greater than three hundred feet. In view of the admissions of the motorman and of the contradictions of the defendant's witnesses, we conclude that the case was properly submitted to the jury.

The court gave the following instruction:

"First. The jury are instructed to find for the plaintiff, unless they believe from the evidence that the defendant's employes, in charge of the car on the occasion complained of, used all the means at their command, having due regard for the safety of the passengers on the car, the crew in charge of it and the property of defendant, to stop or to slacken the speed of the car after the motorman discovered, or by the exercise of ordinary care could have discovered, the plaintiff's horse or horses in a position of peril, and, if they so believe, they ought to find for the defendant."

It will be observed that the instruction makes the defendant liable unless the defendant's employes in charge of the car "used all the means at their command," etc., "to stop or to slacken the speed of the car," etc. The law does not impose upon the defendant's employes the absolute duty to use all the means at their command, consistent with the safety of the car and the persons thereon, to avoid the injury, nor does it impose upon them the duty to exercise the highest degree of care for that purpose. It merely imposes on them the duty to use ordinary care, with the means at their command, consistent with the safety of the car and the persons thereon. The instruction in question prescribes no degree of care. It erroneously leaves that question to the determination of the jury. Lexington Railway Company v. Woodward, 32 R., 653, 106 S. W., 853; Blue Grass Traction Company v. Ingles, 140 Ky., 488, 131 S. W., 278. We also conclude that as the motorman was the only person in a position to act, the duty of using ordinary care with the means at his command should be confined to him alone.

Judgment reversed and cause remanded for a new trial consistent with this opinion.