CASE 74.—ACTION BY VIRGINIA AUSTIN AGAINST THE CHESAPEAKE & OHIO RAILWAY COMPANY.— March 15, 1910.

## Chesapeake & Ohio Ry Co. v. Austin

Appeal from Shelby Circuit Court.

CHARLES MARSHALL, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Carriers—Injuries to Passengers—Actions—Evidence.—In an action for indignities suffered by a passenger at the hands of the conductor, evidence of occurrences between the conductor and other passengers, not overheard by the passenger, was inadmissible.

.2  Carriers—Carriage of Passengers—Insufficient Accommodations.—In an action by a passenger because compelled to ride in a crowded train, the carrier should be permitted to show that it had no notice of any extra travel which would require more than the usual trains, and that the train which it had was sufficient under ordinary circumstances to accommodate all offering to be carried.

3. Carriers—Carriage of Passengers—White and Colored Passengers.—Under the statute requiring white and colored passengers to be carried separately, a carrier may not require a white person to ride in the colored coach and where it does so it is guilty of an actionable wrong.

4. Carriers—Obligation of Carriers to Passengers—Duty to Furnish Seats.—A carrier must furnish seats to passengers, if practicable, and a passenger may refuse to give up his ticket or pay his fare if a seat is not furnished, and one who has

purchased a ticket of a particular class is entitled to accommodations of that class, but in general a passenger electing to remain on a particular train must accept the reasonable accommodations afforded him on such train, and a carrier must provide its train with coaches reasonably sufficient to carry comfortably as many persons as in the exercise of ordinary care it should reasonably anticipate.

5.   Carriers—Obligations of Carriers—Duty as to Taking up Passengers.—A carrier must stop its train a reasonable time for passengers demanding passage to have a reasonable opportunity to board it, and where a train stopped the reasonable and usual length of time for passengers to board it, and a passenger failed to present himself at the train, he cannot recover for being left at the station, though he failed to present himself by reason of the crowd at the station.

6.   Carriers—Passengers—Breach of Contract—Compelling White Passengers to Ride in Colored Coach.—A white passenger voluntarily riding in the colored coach rather than risk getting a seat in another coach may not recover on account of riding in the colored coach, and, where a passenger was not directed to ride in the colored coach, and remained on the train knowing its crowded condition, he cannot complain where he was furnished such accommodations as could reasonably be furnished.

7.   Damages—Passengers—Breach of Contract—Duty to Prevent or Reduce.—A passenger must exercise ordinary care to minimize the damages occasioned by the failure of the carrier to furnish reasonable accommodations or failing to stop at a station a reasonable time to enable the passenger to board the train, and he cannot recover for any loss due to his own want of ordinary care.

WILLIS & TODD for appellant.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On August 29, 1907, the Shelbyville Fair was being held. A number of people going to the fair got on the morning Chesapeake & Ohio west-bound train at Lexington; others at Frankfort. The train had the usual coaches, and, when it left Frankfort, it was

pretty well filled. When it reached Bagdad, there was a large crowd there to get on, and at Christiansburg another large crowd got on. Bagdad is ten miles from Shelbyville and Christiansburg about eight. Mrs. Virginia Austin was one of the passengers who got on at Bagdad, having a round-trip ticket to Shelbyville. According· to her testimony, when the train pulled into Bagdad, the conductor had his head out of the window of the smoker, and had his coat off, ordering the brakeman to conduct the passengers up to the west end of the coach, which was then occupied by negroes. The brakeman took them to that end of the coach, and they got on knowing it was· a negro coach, but not knowing that there were any negroes in it. There were two men and a negro woman in the coach. She took a seat with a friend of hers near the partition, and the rest of her party also took seats in the coach until the seats were filled. After the train started, the conductor came in. He did not say anything to her. She saw him quarreling with a Mrs. Booth, who had gotten on the train with her, but could not hear what he said. He walked quick like he was mad. This had no special effect on her. She was not afraid of the conductor. The condition of the seats was filthy with coal soot and cinders, and the floor was covered with spit. She reached Shelbyville without anything further happening, went to the fair, and came back at 6:30 p. m. to take the train at 7. When the train came, she was not near when it stopped—there was such a crowd. The brakeman said not to rush on the train that he had plenty of room for everybody. There was an immense crowd, and, before she got near the steps or had an opportunity to get on the train, it pulled out. She and her party then hired a

wagon and drove back to Bagdad, ten miles. The night was cold, although the day had been very hot, and she had no wrap.

On the other hand, the conductor of the day train testified that, when the train reached Bagdad, he was on the platform, and invited the people to get on at the west end of the ladies' coach, while the brakeman invited others to get on at the west end of the combination car; that he had on his cap and summer uniform; that the plaintiff made no complaint to him that day; that most of the passengers who got on where she did passed on through the colored compartment on the rear of the train; that he had no notice beforehand of any special crowd going to Shelbyville on that day, and did the best he could with the crowd; that there was plenty of room in the back cars for the people who got on at Bagdad, not seat room, but standing room; and that he directed the people at Bagdad to pass on back. The testimony for the railway company, as to the night train, was, in substance, that the train when it reached Shelbyville stopped the usual length of time for passengers to get on; that, when it was supposed that everybody had gotten on who wanted to get on, the train pulled out. The records of the railway company showed that the train stopped there that night six minutes. All the proof showed that there was a very large crowd at the station that night; that several trains were to leave the station; and that people intending to take passage on all these trains were crowded up on the grounds. The case was submitted to the jury on practically this proof, and there was a verdict and judgment against the railway company for $200 in favor of Mrs. Austin. From this judgment the railway company appeals.

The plaintiff testified on the trial that the conductor was drunk or seemed to be drunk. But she does not testify to anything he said or did, warranting the conclusion that the court properly excluded the evidence. But he allowed a large amount of evidence as to what occurred between the conductor and other passengers. As none of this was heard by the plaintiff and she evidently did not know what was said to the other passengers, all of this evidence should have been excluded. It threw no light on the case of the plaintiff. The conductor was not rude to the plaintiff. There was no improper conduct on his part toward her, and her rights are not affected by the fact, if it is a fact, that in the confusion the conductor said that to other passengers which he ought not to have said. All that was said by the conductor not in the plaintiff's hearing and all that he said unknown to her should have been excluded from the jury. For the same reason, what occurred between the conductor and Ben Marshall or R. C. Hieatt before they reached Frankfort, should have been excluded. The fact that the conductor's face was red, or that there was a scowl on his face, or that he kept saying, "Tickets, tickets," was incompetent; the conductor being naturally a man of red complexion. On a hot day, with a big crowd to manage, he was not required to look amiable, provided that he did not treat the plaintiff with discourtesy. The court should have permitted the defendant to show that it had no notice of any extra travel between Lexington and Shelbyville on that day which would require more than the usual train, and that the train which it had was sufficient under all ordinary circumstances to accommodate all offering to be carried. He should also have permitted the defendant to show that the usual

train had been sufficient to carry all the people hitherto to the Shelbyville Fair, and that they had no reason to anticipate that it would be insufficient on that day.

There was nothing in the evidence to justify an instruction to the jury to find for the plaintiff if the plaintiff was subject to indignities and humiliation at the hands of the defendant's agents in charge of the train; and there was nothing in the evidence to show that it was possible for those in charge of the train to furnish plaintiff a comfortable seat in a first-class car, or that the plaintiff offered herself as a passenger on the train in due time when it reached Shelbyville that night. The undisputed evidence was the plaintiff did not offer herself as a passenger at all. The court properly allowed the plaintiff to recover if she was required to ride in the car set apart for colored passengers. The statute requires white and colored passengers to be carried separately. The railroad company has no right to disregard the statute, and, if it requires a white person to ride in the colored car, it is an actionable wrong. We have heretofore held this both as to white and colored passengers. Quinn, etc., v. L. & N. R. R. Co., 98 Ky. 234, 32 S. W. 742, 17 Ky. Law Rep. 811; Wood, etc., v. L. &. N. R. R. Co., 101 Ky. 705, 42 S. W. 349, 19 Ky. Law Rep. 924; L. &. E. R. R. Co. v. Vincent, 96 S. W. 898, 29 Ky. Law Rep. 1049; Southern R. R. Co. v. Thurman, 90 S. W. 240, 28 Ky. Law Rep. 699, 2 L. R. A. (N. S.) 1108. There was evidence for the plaintiff to the effect that the train stopped at the station only a second or two, and did not afford her a reasonable opportunity to present herself for carriage.

In 6 Cyc. 582, the rule as to passengers on crowded trains is thus well stated: ''The carrier is bound to furnish seats to passengers entitled to transportation, if practicable, and the passenger may refuse to give up his ticket or pay fare if a seat is not furnished. One who has purchased a ticket of a particular class is entitled to accommodations according to his ticket. But, in general the passenger who elects to remain on a particular train must accept the reasonable accommodations afforded him on such train.'' In lieu of the instructions which the court gave, the court will, on another trial, instruct the jury in effect as follows:

''(1) It was the duty of the defendant to provide its train in question with coaches reasonably sufficient to seat and carry comfortably as many persons as in the exercise of ordinary care it should reasonably have anticipated would demand to be carried thereon; and if it failed to do this, or did not furnish the plaintiff such reasonable accommodations as it reasonably could on said train, or if it required plaintiff to ride in the car set apart for colored people, they should find for her the damages she thereby sustained.

''(2) It was the duty of the defendant to s⁺op its train at Shelbyville a reasonable time for passengers demanding passage to have a reasonable opportunity to get on, and, if it failed to do so and by reason of this plaintiff was left at Shelbyville, the jury should find for her damages she thereby sustained.

''(3) Unless the jury find as set out in No. 1 or No. 2, they should find for defendant.

''(4) If the jury find for the plaintiff, they should find for her such a sum as will reasonably com-

pensate her for any humiliation of feelings she endured, and for any personal discomfort she suffered, or any necessary expense she incurred which was the direct result of defendant's failure as set out in No. 1 or No. 2.

"(5) If the plaintiff voluntarily rode in the colored car, rather than risk getting a seat in one of the other cars, she can recover nothing on account of riding in that car. If she was not directed to ride in the colored coach, and remained on the train knowing its crowded condition, she cannot complain if she was furnished such accommodations as could reasonably be furnished on it. If the train stopped at Shelbyville the reasonable and usual length of time for passengers to get on and plaintiff failed to present herself at the train, she can recover nothing for being left there, although she failed to so present herself by reason of the crowd at the station."

In cases of this sort, it is incumbent on the plaintiff to exercise ordinary care to minimize the damages. The plaintiff cannot recover for any suffering or loss which was due to her own want of ordinary care.

Judgment reversed and cause remanded for a new trial.