### Conley v. Central Kentucky Traction Company.

(Decided March 13, 1913.)

#### Appeal from Franklin Circuit Court.

1. New Trial.—An order granting a new trial will not be reversed unless it appears that the circuit court abused its discretion.
2. Separate Coach Law—Equal Protection to White and Colored Persons.—The separate coach law applies with like effect to both white and colored passengers, and colored passengers are entitled to the same redress as white passengers for injuries growing out of its violation.

SCOTT & HAMILTON for appellant.

HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On August 13, 1908, plaintiff, Carrie Conley, a colored woman, was a passenger enroute from Frankfort

to Lexington on one of the cars of the Central Kentucky Traction Company. Claiming that while she occupied the compartment set apart for colored people the conductor in the employ of the Central Kentucky Traction Company undertook to compel her to vacate said compartment and to ride in the vestibule of the car, and upon her refusal to do so the conductor insulted her and encouraged and permitted white passengers to occupy the same compartment with her and to insult and humiliate her, and that by reason thereof she was injured and humiliated in her feelings, plaintiff brought this action against the Central Kentucky Traction Company, asking in the first paragraph of her petition damages in the sum of $1,000. In the second paragraph of her petition she alleged that on August 14, 1908, she was a passenger enroute from Lexington to Frankfort, and the conductor and white passengers who had boarded the car were guilty of conduct similar to that set out in the first paragraph, and asked damages on this account in the sum of $1,000. Defendant denied the allegations of each paragraph of the petition. Two trials were had. The first trial resulted in a verdict and judgment in favor of plaintiff for $200. The trial.court granted a new trial. The second trial resulted in a verdict in favor of the defendant. Plaintiff moved that the first verdict and judgment be substituted for the last. This motion was overruled and judgment was entered in favor of the defendant. Plaintiff appeals.

The only question presented for review is the propriety of the trial court's action in granting a new trial.

Briefly stated, the evidence is as follows:

On the morning of August 13, 1908, plaintiff took passage on one of defendant's cars for Lexington. She was accompanied by a friend of hers from Chicago. They paid their fare from Frankfort to Versailles. Enroute to Versailles there were only three colored passengers in the colored compartment. When she and her friend reached Versailles, the other passenger got off, leaving only two colored passengers in the car. At Versailles a large crowd of white people, bound for Lexington, got on the car for the purpose of going to the Blue Grass Fair. Carrie Conley states that when the car reached Versailles the conductor came in and asked them if they were going to get off. She said, "No, we are not going to get off." Later on he asked the same question. She replied that they were passengers for Lexington. After they

refused to get off, the conductor said: "If you all won't get off the car you will take seats outside with the motor-man." She and her friend declined to do so. The conductor said: "We will put chairs out there, and it is nice and cool and you won't have to pay any fare." Plaintiff's friend said: "We are not hunting a free ride." After that they kept their seats. The conductor put the white women and children in the front coach and let the men who could not get into the front coach crowd the colored compartment. It was very unpleasant in the car. When the conductor came back, plaintiff said: "What do you expect to do? You are crowding us all out here." The conductor made no answer. Plaintiff then said: "I will certainly report you when I get to Lexington." When the car reached the fair grounds, all the white people got off. Plaintiff paid no fare from Versailles to Lexington. Plaintiff says it was very unpleasant in the car, and that some of the white passengers made the remark that they wished the car would run off the track. She did not appreciate at all the way she was treated. She did not think she was treated right. It put her and her friend in a bad condition. The next afternoon—it being August 14—plaintiff left Lexington on the five o'clock car. The same conductor was in charge. When they reached the fair grounds, a large crowd of white people boarded the car. The conductor came into the colored compartment and spoke to a man and woman, who got up and went out. The conductor said to plaintiff: "You get up and go out there and ride with the motorman." His demeanor was awful. "He spoke as hateful as he could. He wasn't a bit pleasant—just like we were not people." When he had marched everybody else out, he said: "You get on the front there and ride with the motorman." Plaintiff replied that she would not do so. Plaintiff then kept her seat. The conductor's manner was rough. The people laughed at plaintiff and her friend. There was no vestibule on the car on which they returned. She heard a passenger say something about negroes and fumigating the car. On cross-examination, plaintiff stated that the passengers laughed at the colored people who consented to being led out. When she said, "I am not going to give up my seat," they got quiet.

Rebecca Roberts stated that she was a passenger on the car on August 14th. After they reached the fair

grounds a large crowd of white people got on, and the conductor asked the colored people to go out and ride with the motorman. Some white gentleman said: "We will have to fume the car with sheep-dip so we can ride on it." This witness offered the fare to the conductor, but he would not take it.

Ada Mack, the companion of Carrie Conley, testified that when the car going from Frankfort reached Versailles a large crowd of white people got on. The conductor asked her and Carrie Conley if they would not wait for the next car. Witness said no, that they were in a hurry. The conductor said, "We will let you go for half fare." He also said: "If I put chairs out there with the motorman, will you ride there?" Witness said: "No, this is the place for us." The conductor then went away. Witness asked him if those white men had to ride in the car with witness. The conductor said: "There is no place else for them." When witness told the conductor she was going to report him he got angry. The conductor asked her in an ordinary manner to get off at Versailles. One of the white men was smoking. She and Carrie Conley were the only colored persons in the colored compartment.

For the defendant, J. R. Farris testified that he was the conductor in charge of both cars. When the car from Frankfort reached Versailles, he only had two colored passengers in the colored compartment. He suggested to them that if they would take a seat on the front, it would give much more room for the other passengers. The colored passengers refused to do so. He then cleared the coach of the white passengers. The next afternoon a large crowd got on his car at the fair grounds. A number of white people got into the colored compartment. Their conduct was quiet and peaceful. There was no smoking in the car on either occasion. He asked plaintiff and her friend politely to take a seat in the vestibule. Nothing was said to hurt the feelings of any of the colored passengers. Two or three passengers on the car confirmed the statements of the conductor.

At the conclusion of the first trial, the defendant asked a new trial because the verdict was excessive and was not sustained by sufficient evidence, and because of errors in the admission and rejection of testimony. Complaint was also made of the fact that counsel for plaintiff made misleading and prejudicial statements to the jury,

and also misconstrued the instructions and urged upon the jury a construction inconsistent with their meaning.

In the case of Pace v. Paducah Railway & Light Co., 89 S. W. 105, 28 Ky. L. Rep. 279, the court, in discussing the question of new trial, said:

"It has been frequently pointed out by this court that the discretion of the trial court in granting a new trial, or refusing it, is one that will not be disturbed by the appellate tribunal, except it is made to appear that it has been abused. The trial judge hears the evidence, as does the jury, and, while the verdict is primarily that of the jury, still the trial judge's concurrence is necessary to its completeness as to the basis of the judgment. He likewise hears the witnesses, and has even a better opportunity, perhaps, for the judging of their demeanor and surroundings as liable to improperly affect the result of the trial, than the jurors themselves have. It is peculiarly his business to see that the trial is fair and that the jury is not imposed upon, either by prejudicial misconduct of parties or counsel, or having produced to them evidence under erroneous rules, as well as to see that they are not subjected to other improper influences in reaching their verdict. For a breach of any of these matters, as well as for his belief that the verdict is contrary to the evidence, he may refuse to sanction it, and grant a new trial."

The rule above announced is followed in the following cases: Mussellman v. C., N. O. & T. P. Ry. Co., 126 Ky., 509, 104 S. W. 337, 31 Ky. L. Rep. 908; Walls v. Walls, 99 S. W. 969, 30 Ky. L. Rep. 949; Cochran v. Cochran, 93 S. W. 18, 29 Ky. L. Rep. 333; City of Louisville v. Johnson, 69 S. W. 803, 24 Ky. L. Rep. 685; Dieckman v. Weirick, 73 S. W. 1119, 24 Ky. L. Rep. 2340; Reliance Textile & Dye Works v. Mitchell, 24 Ky. L. Rep. 1286; Hunt v. L. & N. R. R. Co., 116 Ky., 545; Brown v. L. & N. R. R. Co., 144 Ky., 546.

And in the more recent case of Wilhelm v. Louisville Railway Co., 147 Ky., 196, the court, in discussing the same question, used the following language:

"The circuit court has a discretion as to granting new trials. It is a broad discretion to be exercised in the interests of the proper administration of justice. We have uniformly held that greater effect will be given an order granting a new trial than one refusing it, as it is the duty of the circuit court to grant a new trial when the ends of justice require it. The new trial being granted,

the parties are simply where they were before the trial was had. The circuit judge sees and hears the witnesses, the proceedings are had in his presence and much may come under his knowledge that is not in the transcript before us. So it is we have held that an order granting a new trial will not be reversed unless it appears the circuit court abused his discretion."

In the present case the trial court, of course, heard the witnesses and observed their demeanor while on the stand. He also heard counsel for plaintiff discuss the instructions and argue the case to the jury, and was therefore in better position than we are to determine whether or not counsel misconstrued the instructions, and whether or not he confined himself within the limits of legitimate argument, or went outside of the record and made an improper appeal to the passions and prejudices of the jury. Under the circumstances, therefore, we cannot say that the trial court, in granting a new trial, abused his discretion.

Counsel for plaintiff contend that the effect of sustaining a new trial in this case is to discriminate between white and colored people in the application of the Separate Coach Law. Such, however, is not the case. We have repeatedly held that the Separate Coach Law applies with like effect to both colored and white passengers, and that colored passengers are entitled to the same redress as white passengers for injuries growing out of its violation. Quinn v. L. & N. R. R. Co., 98 Ky., 231, 32 S. W. 742; Wood v. L. & N. R. R. Co., 101 Ky., 703; 19 Ky. L. Rep. 924, 42 S. W. 349; L. & N. R. R. Co. v. Renfro's Adm'r., 142 Ky., 590. All that we decide in this case is that the trial court did not abuse its discretion in granting a new trial. The same conclusion would have been reached had plaintiff been a white woman instead of a colored woman.

Judgment affirmed.