## CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* ALLISON.

### Opinion delivered July 5, 1915.

1. CARRIERS—INJURY TO PASSENGER—COMPELLING WHITE PASSENGER TO RIDE IN NEGRO COMPARTMENT.—Where appellee, a passenger on a railroad train, was compelled to ride a distance of three miles, in the negro compartment of a combination car, for a period of fifteen minutes, there being only one negro in that compartment, and the white compartment being crowded, a verdict awarding appellee $875 damages will be held excessive.

2. CARRIERS—INJURY TO PASSENGER—COMPELLING WHITE PASSENGER TO RIDE IN NEGRO COMPARTMENT.—Under the above facts, an instruction to find for the plaintiff, in an action for damages sustained, held erroneous and prejudicial.

3. CARRIERS—SEPARATE COACH LAW—Under the separate coach law, it is a misdemeanor, for which the defendant company and its employees may be fined, to permit colored persons to ride in the white compartment and *vice versa*, but a violation of the statute by the railroad company does not necessarily confer upon a passenger, a right of action against the company; that right, and the question of damages, would depend upon the circumstances of each case.

4. CARRIERS—COMPELLING WHITE PASSENGER TO RIDE IN NEGRO COMPARTMENT—RIGHT OF ACTION—DAMAGES.—A white passenger has the statutory right to ride in the white coach, and the refusal of a carrier to accord that right by assigning her to the negro coach without her consent, will constitute a breach of the contract of carriage, which will confer a cause of action, and any humiliation suffered may be considered in measuring the damages.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1.   The instruction numbered 3, given at appellee's request, amounted to a peremptory instruction to find for the appellee.

The Separate Coach Act, Acts 1891, page 15, is a police regulation, making a failure to provide separate coaches or compartments for the white and negro races, and the failure to so equip their trains, a misdemeanor punishable by fine, and likewise makes the failure of the conductor to assign passengers of each race to the coach or compartment to which they belong, a misdemeanor. But appellee was not damaged at all by the act of the conductor in seating her in the coach set apart for negroes, or, if she was damaged in any manner, her damages are not such as give her a right of recovery under the law of this State.

2.   The court erred in giving instruction 5, requested by appellee, to the effect that in estimating her damages they would allow her compensation for her mortification, humiliation, fear and nervous shock, and should have instructed the jury as requested by appellant, that under the evidence the plaintiff was not entitled to recover for any one of these items.   84 Ark. 42; 89 Ark. 187.

3.   The verdict is grossly excessive.

*M. S. Cobb,* for appellee.

1.   The misdemeanor feature of the act is directed against the railway company, and not against the conductor.   Kirby's Dig., § § 6622-6632.   He is nowhere left any discretion to mix the races in the same coach.

The third instruction given at appellee's request is correct.   If not, then the violation of the separate coach law does not confer a cause of action in favor of the party upon whom the consequences of the violation rest.

2.   Instruction 5 correctly declares the law.   148 Ky. 701.

3.   The judgment was not excessive.   In requiring appellee to ride in the negro coach, appellant violated

both its contract with her and also the criminal laws of the State, and it was not necessary that she should have sustained physical injury in order to entitle her to recover for mental pain and anguish. 148 Ky. 701; 87 Am. St. Rep. 256; 2 L. R. A. (N. S.) 1108; 25 Tex. Civ. App. 500, 61 S. W. 237; 111 Va. 730, 69 S. E. 927. See, also, 147 S. W. 411; 41 L. R. A. (N. S.) 958; 60 So. 11; 137 Ky. 611; 126 S. W. 144; 136 Am. St. Rep. 307.

SMITH, J. On March 18, 1913, the appellant company ran a train from Malvern to Hot Springs, which carried only a combination car for the use of passengers. This car was divided by a partition, and the front end of it was devoted to the use of white passengers while the rear end was used by colored passengers. Appellee, who is a white woman, flagged the train at Price and rode to the station of Lawrence, a distance of three miles. She was accompanied by her sister and her brother, and she testified that when she boarded the train, she was directed by the conductor to go into the negro end of the coach, and that the conductor refused to permit her to ride in the white end of the coach where her brother and other white passengers were riding, and that she went into the negro end of the coach, where she had to sit in an uncomfortable position to keep from rubbing up against a negro passenger, who occupied a seat with its back turned against the seat which she occupied. She testified that there were a number of negroes in the car, and that she was much frightened and humiliated by being compelled, over her protest, to ride in the negro coach. According to appellee, a Mrs. Wyatt, a white woman, took passage on this train at the same time, and as they got on the train her sister was in front and Mrs. Wyatt was next, and she followed after Mrs. Wyatt, and the conductor was behind her and said, "Pass on, pass on;" that they were looking for a seat, and passed on, and came to the door leading into the negro coach, when they stopped and waited before going in, when the conductor said, "Go on through," and they opened the door and entered the car, when they started to turn around and come back, but the conductor had told her sister that she would get a seat in that end of the car,

and they took a seat and waited until the conductor came to collect the fare, when they told him that they had not been accustomed to riding in a negro car, and did not like the idea of doing so. Appellee also testified that her brother and Mrs. Wyatt's husband got on the train when they did, but that the conductor would not let them ride in the negro car. Appellee paid fare amounting to nine cents, and rode a distance of three miles to her destination, and was a passenger on the train for about fifteen minutes, and she testified that during this time she was much frightened and humiliated. Appellee's sister substantially corroborated the testimony of appellee, and her brother testified that he undertook to follow his sisters into the negro end of the car, but the conductor told him not to go in there, and he was sent to the white coach, where he succeeded in finding a seat.

The evidence of the conductor was to the effect that the end of the coach set aside for the white passengers was crowded, and no seats were to be had there, and that as there were no ladies in that end of the car, the passengers had been smoking and the car was stuffy with smoke, and the passengers in that end of the car were having a good time, "not vulgar, but just having a good time," and he thought when these ladies got on they would be more comfortable in the negro car, as there was only one negro in there, and seats were not to be had in the white end of the car. He denied that he refused appellee's brother admission to the colored car, and he denied that he required appellee and the ladies accompanying her to ride in the colored car, but testified that he knew they were white women, and that if any objection whatever had been made, he would not have sent them into the negro end. He further testified that he sent his own wife, who was also a passenger, into that end of the car for the same reason, which induced him to send appellee and her companions there, and while he knew it was a violation of the law, he thought it was the best thing to do under the circumstances, and that he rode in that end of the coach practically all the way between the stations of Price and Lawrence.

The conductor's wife testified that she rode in the negro coach because it was a more comfortable place to ride; because the other coach was crowded, and that there was only one negro man in the coach, and that the coach was well lighted. Appellee and her companions admit having seen the conductor's wife, but testified that she wore a veil, and they thought she was a colored woman.

At the request of appellee, the court gave instructions which declared the purport of the separate coach law and the penalties for its violation. Among other instructions, the court gave an instruction numbered 3, which reads as follows:

"No. 3. You are instructed that it being admitted by the defendant that plaintiff is a white woman, and that the conductor of the defendant knew that she was a white woman at the time he received her as a passenger, and knowing this, he conducted her into the negro coach or compartment, defendant was guilty of negligence, and you should find for the plaintiff."

Upon the part of the appellant, a number of instructions were asked which in effect declared the law to be that, if the appellee did not protest against riding in the negro car, but rode there voluntarily, she could not recover. Other instructions were asked which we find it unnecessary to set out, as our discussion of appellee's instruction numbered 3 will indicate our view of the law of the case.

(1) There was a verdict and judgment in favor of appellee for the sum of $875; and the excessiveness of the verdict is one of the errors assigned. We would feel constrained to reverse this case because of the excessiveness of the verdict, if no other error had occurred at the trial.

According to the evidence on appellee's behalf, there was no physical compulsion on the part of the conductor which required her to ride in the negro coach, and she rode there, in company with two other white passengers, for a distance only of three miles, and during this time there was no noise, no vulgarity, or other misbehavior

on the part of any passenger, and although appellee may not have known that the conductor's wife was a white woman, yet such was the fact, and during most of this short distance, the conductor rode in this end of the coach.

According to the evidence on the part of appellant, appellee and her companions voluntarily rode in the negro end of the coach, and while the conductor admitted that he knew he was violating the law, he sent appellee and her companions into the negro end of the coach as a matter of gallantry, for their accommodation.

(2) Under instruction numbered 3, set out above, the jury was told to find for appellee if they found the fact to be that the conductor had assigned her to the negro coach. The conductor had admitted that he knew appellee was a white woman, and that he had conducted her into the negro coach, so that the instruction in effect directed the jury to return a verdict in appellee's favor. We think this instruction was erroneous and prejudicial. It fails to take into consideration the contention of the railway company that appellee and her companions voluntarily occupied seats in the negro coach.

(3) The separate coach law requires all railroad companies to provide equal but separate and sufficient accommodations for the white and African races, and imposes upon the employees in charge of the operation of the train the duty of assigning passengers to the cars in which they should ride. Passengers are required to occupy the cars thus assigned to them. The violation of this act is made a misdemeanor, punishable by fine, and the railroad company and its employees, and the passengers, as well, are subject to the fines imposed by the statute for any failure to comply with its requirements. Sections 6622 to 6632, Kirby's Digest. A railroad company might violate this statute without conferring a cause of action for damages upon the passenger. *St. Louis & San Francisco Rd. Co.* v. *Petties*, 99 Ark. 415. For instance, under the conductor's statement, the separate coach law was violated, and he and the railroad company were both subject to a fine, but this violation of the law did not necessarily give appellee a cause of action for damages; and

she would have no cause of action if she voluntarily entered the negro coach and rode there as a matter of choice or preference. The rule would be otherwise if she was not permitted to ride in the white coach, but had been compelled to ride in the negro coach. She would also have a cause of action if, without her consent, she was assigned to the negro coach.

The damages recoverable in either case would, of course, depend upon the attending circumstances. Upon the question of the measure of damages, the court gave a correct instruction, which appears to have been approved in the case of *Louisville & Nashville Rd. Co.* v. *Richtel*, 148 Ky. 701, 30 Am. & Eng. Ann. Cases, 517. This instruction read as follows: "If you find for the plaintiff, in estimating her damages, you may consider her age and degree of refinement, her mortification and humiliation, if any, in having to ride in the negro coach, with the negroes, if she did have to ride in said coach, her fear and nervous shock, if you believe from the evidence she was frightened, or had a nervous shock by reason of having to ride with the negroes, and assess such sum as damages as in your judgment will fairly compensate her for the same."

But, as has been said, the court's third instruction did not submit to the jury the question of liability for any damages whatever, and for this error the judgment must be reversed and the cause remanded.

(4) It is insisted that, inasmuch as appellee sustained no physical injury, she can have no cause of action for the humiliation suffered by her, and the cases of *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 84 Ark. 42, and *Chicago, R. I. & P. Ry. Co.* v. *Moss,* 89 Ark. 187, are cited to support that view. But the rule announced in those cases does not apply to the facts of this case. Here appellee had the statutory right to ride in the white coach, and the refusal to accord that right, by assigning her to the negro coach without her consent, if that was done, was a breach of the contract of carriage, which conferred a cause of action, and it was proper to consider any humiliation suffered in measuring the damages. The rule to be applied

is the same as that applied to the case of the wrongful ejection of a passenger, where humiliation is considered as an element of damages growing out of the breach of the contract of carriage.

Reversed and remanded.