## Doherty v. First National Bank of Louisville.

(Decided June 14, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas No. 1).

1. New Trial—Trial Courts—Discretion.—Trial courts have a broad discretion in the granting of new trials, and this discretion will not be interfered with except in case of clear abuse..

2. Bills and Notes—Parties—Pleading—Demurrer.—Since, under the Negotiable Instrument Act, the holder of a negotiable instrument may sue thereon in his own name, a petition which shows that the notes sued on were endorsed in blank and owned and held by plaintiff at the date of their maturity, and that the notes were filed as exhibits with the petition, is not defective because of failure to allege ownership of the notes when suit was filed.

3. Bills and Notes—Presentment—Pleading.—Since the custody by a bank of a note payable at the bank at its maturity is a sufficient presentment, a petition which shows that each of two notes was by its terms, made payable at the plaintiff bank and was owned and held by it on the date of its maturity, and that no part of

either of said notes was then paid, sufficiently alleges presentment, even though presentment be not alleged in terms.

4. Pleading—Defects—Cure by Verdict.—Where the question whether or not written notice of the dishonor of certain notes sued on was given to the defendant in proper time, and the further question whether or not defendant, after the maturity and dishonor of the notes, stated to the officers of the bank that he intended to pay the notes, were submitted to the jury and decided in favor of plaintiff, any defect in the petition respecting the giving of notice or the waiver thereof was cured by the verdict.

5. Bills and Notes—Notice of Dishonor—Waiver—Evidence—Sufficiency.—In an action by the holder of certain promissory notes against an endorser, evidence of notice of dishonor and of waiver held sufficient to sustain a verdict in favor of plaintiff.

6. Bills and Notes—Notice of Dishonor—Sufficiency.—A notice of dishonor that gives the amount of the notes, the date of their maturity, the names of the maker and several endorsers, of whom the person receiving the notice is one, and states that the notes are not attended to and directs the person to whom the notice is given to call at once and pay the notes, sufficiently identifies the notes and indicates that they have been dishonored by non-payment.

7. Bills and Notes—Notice of Dishonor—Joint Endorsers—Discharge.—Under the Negotiable Instrument Act, one joint endorser who receives notice of dishonor is not discharged by the failure to give notice to the other endorsers.

8. Evidence—Rejection—Subsequent Admission—Effect.—Error in the rejection of evidence is cured by its subsequent admission.

9. Bills and Notes—Notice of Dishonor—Custom of Bank—Advice of Counsel—Evidence.—In an action by a bank against an endorser of two promissory notes, evidence that the bank's former attorney had advised the bank that it was not necessary to give notice to endorsers upon notes that had been dishonored was properly excluded.

10. Evidence—Custom—Competency of Witness.—One who was not connected with the bank at the time notice of dishonor of certain notes was given is not a competent witness to prove the bank's custom at that time, respecting the giving of notice of dishonor.

11. Bills and Notes—Notice of Dishonor—Dishonor of Other Notes—Evidence.—Evidence that a bank failed to give to the defendant notice of dishonor of other notes on which he was an endorser is not admissible to show a failure to give notice of dishonor of the particular notes sued on.

12. Bills and Notes—Notice of Dishonor—Waiver.—Under the Negotiable Instrument Act, a promise to pay, made by an endorser after the time within which notice of dishonor should have been given, is all that is necessary to constitute a waiver of notice. In making such a promise it is not necessary to use the words "I promise." Words showing a clear intention to pay will be construed as a promise.

13. Bills and Notes—Notice of Dishonor—Instructions.—In an action on certain promissory notes by a bank against an endorser, an instruction telling the jury in substance that if they believed from the evidence that subsequent to the maturity and dishonor of said notes the defendant stated to the plaintiff bank, or any of its officers, that he intended to pay said notes, or his part thereof, this was a waiver of a failure to give notice of dishonor, properly submitted the question of waiver to the jury.

O'DOHERTY & YONTS for appellant.

HELM BRUCE, BRUCE & BULLITT and GROVER G. SALES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Affirming.

This is a suit by the First National Bank of Louisville against Charles J. Doherty to recover on two promissory notes for $5,000.00 each, dated July 11th, 1908, payable four months from date, and executed by the Paracamph Company to the order of Charles J. Doherty, C. C. Mc-Clarty and George M. Boone, and endorsed by them to the bank. The first trial resulted in a verdict for the defendant. A new trial was awarded and on the second trial there was a judgment in favor of plaintiff. The defendant appeals.

1. It is insisted that the trial court erred in granting the new trial. In view of the fact that trial courts are charged with the duty of seeing that trials are fairly conducted, and are in a position to see and appreciate the effect of prejudicial conduct on the part of the parties, or improper argument on the part of counsel, we have uniformly ruled that they have a broad discretion in the granting of new trials, and that this discretion will not be interfered with except in case of clear abuse. Wilhelm v. Louisville Ry. Co., 147 Ky. 196, 143 S. W. 1013; Pace v. Paducah Ry. & Lighting Co., 28 R. 278, 89 S. W. 105; Conley v. Central Ky. Traction Co., 152 Ky. 764, 154 S. W. 41; Pack v. Camden Interstate Ry. Co., 154 Ky. 538, 157 S. W. 906. In this case we have carefully considered the record of the first trial and conclude that there was no abuse of discretion.

2. It is next insisted that the petition is fatally defective and that the trial court erred in refusing to sustain defendant's motion for judgment, notwithstanding the verdict.

The petition is first assailed on the ground that it does not allege ownership of the notes at the time of filing suit. Under the Negotiable Instrument Act, the holder of a negotiable instrument may sue thereon in his own name. Subsection 51, section 3720b, Kentucky Statutes. "Holder" means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof. "Bearer" means the person in possession of a bill or note which is payable to bearer. Subsection 190, section 3720b, Kentucky Statutes. The instrument is payable to bearer * * * when the only or last endorsement is an endorsement in blank. Subsection 9, section 3720b, Kentucky Statutes. The petition alleges that the notes were owned and held by the bank at the date of their maturity. These notes were endorsed in blank. They were in possession of the bank when suit was instituted and were filed as exhibits. Notwithstanding the failure of the bank to allege that it owned the notes when suit was filed, the above facts are sufficient to show that it was the holder of the notes and entitled to sue thereon in its own name.

The next ground of attack is the failure of the petition to allege presentment and demand. It is true that presentment and demand are not alleged in terms. The following facts, however, are alleged: Each of the notes was, by its terms, made payable at the plaintiff bank and was owned and held by it on the date of the maturity thereof, and no part of either of the notes was paid at its maturity. In other words, the notes were in the bank on the day when they became due and were not paid on that day. It being well settled that the custody by a bank of a note payable at the bank at its maturity is a sufficient presentment,—Huffaker, etc. v. National Bank of Monticello, 13 Bush, 644; subsections 72 and 73, section 3720b, Kentucky Statutes it follows that the facts alleged are sufficient to show presentment, even though presentment is not alleged in terms.

Still another ground of attack on the petition is that notice of dishonor and of waiver are not properly pleaded. With respect to these matters, the petition, after setting out the execution of each of the notes, its endorsement to the bank and its non-payment at maturity, is as follows:

"That when and as soon as said note was not paid at maturity, written notice of its dishonor and non-payment was given to the defendant, Charles J. Doherty, and to

each of the other endorsers; that in addition thereto, the defendant, Charles J. Doherty, waived any notice of dishonor of said notes being given to him.''.

Without entering into a discussion of the sufficiency of these allegations, we may say that the question whether or not written notice of the dishonor of the notes was given to the defendant in proper time, and the further question whether or not defendant, after the maturity and dishonor of the notes, stated to the officers of the bank that he intended to pay the notes, were submitted to the jury and decided in favor of plaintiff, and we, therefore, conclude that any defect in the allegations of the petition respecting these matters was cured by the verdict. Hill v. Ragland, 114 Ky. 209, 70 S. W. 634; Henry Clay Fire Ins. Co. v. Barkley, 160 Ky. 154, 169 S. W. 747; Title Guaranty & S. Co. v. Comonwealth, 141 Ky. 570; Winstead v. Hicks, 135 Ky. 158. It follows that the motion for a judgment, notwithstanding the verdict, was properly overruled.

3.   Another contention is that the evidence is altogether insufficient to sustain the verdict. The evidence for plaintiff is as follows: James B. Brown, then president of plaintiff bank, and Catherine Mooney, his stenographer, testify that on the morning of November 12th, 1908, the day after the maturity of the notes, a letter notifying the defendant of the dishonor of the notes was dictated by Mr. Brown to Miss Mooney. The letter was written out by Miss Mooney on a typewriter and signed by Mr. Brown. He gave her specific directions to see personally to the mailing of the letter. Miss Mooney addressed the letter to Mr. Doherty at his usual place of business in the Columbia Building in the city of Louisville. She thinks she put a two-cent stamp on it and then deposited it with her own hands in the mail box at the corner of Fifth and Main streets before ten o'clock on the same morning. A carbon copy of the letter was produced and read. The superintendent of mails for the Louisville post office testified that a letter deposited in a box at Fifth and Main streets before ten o'clock in the morning, addressed to a party in the Columbia Building, which is located at the corner of Fourth and Main streets, would, according to the usual course of mails at that time, have been delivered at the Columbia Building between two and two twenty-five o'clock in the afternoon. It was further shown that the letter in question was never re-

turned to the bank, which would have been done if it had not been stamped or there had been any error in direction, etc. In addition to the above facts, Mr. Brown, Miss Mooney and H. L. Rose, discount clerk, all testify that on the morning of November 13th, 1908, Mr. Doherty came into the bank with the letter referred to in his hand; and that after stating that he had received the letter said that he would pay the notes, but as there were two other endorsers on the notes he wanted an opportunity to force them to pay their part. As opposed to this evidence, the defendant emphatically denies that he received the letter in question, or that he went to the bank and promised to pay the notes. It is suggested that the long lapse of time after the maturity of the notes makes it impossible to rely on the recollection of the witnesses, especially in view of the fact that upon one of the material points, i e., the stamping of the letter, Miss Mooney did not state emphatically that she actually stamped the letter, but stated merely that she thought she did. This statement of hers, considered in connection with the positive statement of other witnesses to the effect that the defendant appeared in the bank on the morning of November 13th, 1908, with the letter in his hand, and the further fact that the letter was never returned to the bank, is, we think, sufficient to show that the letter was duly stamped. Instead of the verdict being flagrantly against the evidence, we conclude that the weight of the evidence is in favor of the finding of the jury.

In this connection it is insisted that the letter itself is not a sufficient notice of dishonor. The letter is addressed to the defendant and is as follows:

"Two notes of the Paracamph Company for $5,103.35 each bearing the endorsements of Geo. M. Boone, C. C. McClarty and yourself matured in this bank on the 11th inst., and are not attended to. Please call at once and pay these notes and oblige,

"Very respectfully,
"President."

It is argued that the notes are not for $5,103.35 each but for $5,000.00 each, and are, therefore, not correctly described; and that the letter contained no statement that the notes had been presented for payment and payment refused. The statute provides that the notice may be given in writing, and may be given in any terms which sufficiently identify the instrument and indicate that it

has been dishonored by non-acceptance or non-payment. Kentucky Statutes, subsection 96, section 3720b. Including the interest, the amount due on each of the notes was $5,103.35. It will thus be seen that the notice gives the amount of the notes, the date of their maturity and the names of the maker and the several endorsers, of whom the person receiving the notice was one. There can be no question that the language of the notice was sufficient to identify the notes concerning which it was given. Furthermore, the notice shows that the notes in question were not attended to. This statement is followed up by the further direction that defendant "please call at once and pay these notes." Clearly these statements were sufficient to indicate to the defendant that the notes in question had been dishonored by non-payment.

4. Another error assigned is the refusal of the trial court to direct a verdict in favor of the defendant at the close of the evidence on the second trial. In support of this contention it is pointed out that the petition alleged that notice of dishonor had been given, not only to the defendant but to the other endorsers, and that the plaintiff failed to prove that notice was given to the other endorsers. In this connection, it is argued that the defendant and the other endorsers were joint endorsers, and that a failure to give notice to the other endorsers released the defendant. This precise question was before this court in the case of Williams v. Paintsville Nat. Bank, 143 Ky. 781, where the court, after consideration of the Negotiable Instrument Act, announced the rule that a failure to give notice of dishonor to all of the joint endorsers did not have the effect of discharging those to whom notice was actually given. We are not asked to overrule this opinion on the ground that the court, in reaching this conclusion, failed to take into consideration the provision of subsection 100, section 3720b, Kentucky Statutes, which provides that "notice to joint parties who are not partners must be given to each of them, unless one of them has authority to receive such notice for the other." As a matter of fact, however, the court did not overlook this provision of the Negotiable Instrument Act, but correctly concluded that its only effect is to require notice of dishonor to be given to each of the joint endorsers whom it is sought to hold liable, and to discharge only those to whom notice is not given. Nor is the question affected by the fact that plaintiff actually

alleged that notice was given to the other endorsers. This allegation was unnecessary and immaterial. That being true, plaintiff was not required to prove it, nor did it authorize the introduction of evidence by the defendant for the purpose of showing it was not true.

5. We shall next consider certain alleged errors in the rejection of evidence.

On April 10th, 1909, the bank's president wrote to the defendant a letter, calling his attention to the fact that the two notes in question had been past due since November 11th, 1908, and further stating that they had written to him at that time asking that he call and pay the same, but that, at his request, the notes had been held in their past due papers since that date. In response to this letter the defendant wrote to the bank's president on April 12th, 1909, that the letter just received was the first and only notice he had ever been given in regard to the maturity of the two notes, and that he had never made any request of the bank to hold the notes as past due paper. When Mr. Brown was on the stand the letters were excluded. Afterwards the defendant, while on the stand, was permitted to read the letters. Whether or not the letters were admissible in evidence it is unnecessary to determine, for, even if improperly excluded in the first instance, the error, if any, was cured when they were subsequently read in the hearing of the jury.

Complaint is made of the fact that Mr. Brown, the former president of the bank, was not permitted to answer the question whether or not the bank's former attorney, now deceased, had advised the bank that it was not necessary to give notice to endorsers upon notes that had been dishonored. When the court declined to permit the question to be answered, counsel for defendant avowed that the witness, if permitted to answer, would state that the bank's former attorney had so advised the bank, and that immediately thereafter the bank ceased to give notice to endorsers of dishonored paper; and that this was true of a large number of notes, aggregating about $100,000.00. In this case the bank did not attempt to show notice by mere proof of its custom to give notices of dishonor. It introduced direct evidence to the effect that the particular notice was actually given. Inasmuch as the excluded evidence was too remote to be of any probative value, and, if admitted, would have injected into the case many issues that were altogether collateral

to the main issue, we conclude that it was properly rejected.

Complaint is also made of the fact that Mr. McClarty, a former officer of the bank, was not permitted to testify that it was usual and customary for the bank to send out notices on the days the dishonored notes matured.

This evidence, even if admissible, was properly excluded, because Mr. McClarty was not connected with the bank when the notices in question were sent out, and was not a competent witness to show the bank's custom at that time. We may add, however, that Mr. Brown, who was the bank's president at that time, frankly admitted that such was the custom of the bank. Having received the benefit of this evidence from a witness who actually knew of the custom, we are unable to see how defendant was prejudiced by the refusal of the court to hear evidence from a witness who was not qualified to testify on the question.

The court did not err in excluding evidence respecting the bank's failure to give notice of dishonor of other notes on which the defendant was the endorser and which he had paid to the bank. This evidence was not germane to the real issue. What the bank failed to do in regard to other notes was not admissible for the purpose of showing its failure with respect to the notes sued on.

6. Instruction No. 2 is as follows:

"If you believe from the evidence that notice of dishonor of said notes was not given as described in the preceding instruction, yet if you believe from the evidence that subsequent to the maturity and dishonor of said notes the defendant stated to the plaintiff bank, or any of its officers, that he intended to pay said notes, or his part thereof, this was a waiver of any failure there might have been, if any, to give him such notice of nonpayment, and he is liable on said notes, and the jury should find for the plaintiff, but, unless you so believe from the evidence, the law is for the defendant and you will so find, provided you also find for the defendant under the first instruction."

This instruction is attacked on the ground that it did not submit to the jury the question whether or not defendant, with knowledge of the fact that he had been discharged by reason of the bank's failure to give him notice of dishonor, promised to pay the notes, and on the further ground that an intention to pay does not amount

to a promise to pay. Under the Negotiable Instrument Act, "notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." Subsection 109, section 3720b, Kentucky Statutes. Whatever may have been the rule prior to the enactment of the Negotiable Instrument Act, we conclude that, under the above section of the act, a promise to pay, made by an endorser after the time within which notice of dishonor should have been given, is all that is necessary to constitute a waiver of notice. Mechanics & Farmers Savings Bank v. Katterjohn, 137 Ky. 427, 125 S. W. 1071. In making such a promise it is not necessary to use the words "I promise." Words showing a clear intention to pay will be construed as a promise. We conclude, therefore, that the instruction complained of properly submitted the question of waiver.

Judgment affirmed.