CITY BUS CO. *v.* THOMAS.

(Division B. April 8, 1935. Suggestion of Error Overruled, May 6, 1935.)

[160 So. 582. No. 31652.]

**Wilbourn, Miller & Wilbourn,** of Meridian, and **Eaton & Eaton,** of Gulfport, for appellant.

426

Mize, Thompson & Mize, of Gulfport, for appellee.

Argued orally by **Barney Eaton, Jr.,** for appellant, and by **S. C. Mize,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, a white man, brought an action against appellant, a common carrier of passengers, alleging that appellant had violated, to his injury, the statute, chapter 332, Laws 1932, which requires motor transportation companies carrying passengers for hire to provide equal but separate accommodations for the white and colored races. Section 9.

The testimony shows that the bus here involved was a small conveyance wherein there were provided seats for sixteen whites, and, in a separate compartment, seats

for nine colored passengers. The bus was proceeding eastwardly about eight o'clock P. M. in the city of Biloxi when the colored compartment became overcrowded so that colored passengers were standing in the aisle in the white compartment. A passenger thereafter boarded the car and, according to the testimony of appellee, which we will accept as true, the operator of the bus directed this passenger to take a seat beside appellee in the white compartment. This seat was immediately to the rear of the driver's seat and within easy reach thereof by touch or by the sound of the voice.

The bus driver testified that the passenger, who was directed to sit on the same seat with appellee, had the appearance of a white man, and in this the bus driver is corroborated by all the white witnesses. The negro witnesses, however, testified that he was a colored man, and, according to their observation, his color could be distinguished without much difficulty. All the witnesses agree that he was well-dressed and well-behaved, and all, including appellee himself, are in agreement that appellee made no objection to riding with the man, said nothing whatever to the man, or to the bus driver, or to any other person, but did move to another seat after having ridden about a mile, although another seat was all the while available to appellee had he chosen to move sooner or at once.

In states where there is a large colored population it has been found by long experience that peace, harmony, and good will between the races is essentially promoted by a separation between them, so far as practicable, in all their social activities, and this fact is recognized as well by the colored as by the white population. It was in pursuance of this experience that the statutes were enacted requiring separate accommodations in public conveyances, although it was well recognized and understood that in all cases, in all circumstances, and under all emergencies, a hard and fast or rigorous enforcement

of the statute would be impossible; and particularly is this true in respect to transportation by motorbus in crowded urban communities.

These statutes have, therefore, been given a reasonable interpretation by the courts and have been administered without harshness in their application to cases. Indeed, few cases have arisen under them. Illustrative of what has been above said, all the courts are in agreement that where a passenger voluntarily participates in a violation of the statute, or so conducts himself as that his actions amount to consent, he is not entitled to maintain a suit on account of the violation. Anderson v. Gulf & S. I. R. Co., 147 Miss. 164, 113 So. 188; Chicago, R. I. & P. R. Co. v. Allison, 120 Ark. 54, 60, 178 S. W. 401; Chesapeake & O. R. Co. v. Austin, 137 Ky. 611, 126 S. W. 144, 136 Am. St. Rep. 307, 311. Moreover, we have found no case, in such investigation as we have been able to make, and no such has been cited in the briefs, wherein a party has been allowed to recover damages except where he objected or protested against the violation at the time of the occurrence, as was done in Payne v. Stevens, 125 Miss. 582, 88 So. 165.

Let us examine this question in the light of our experiences and observation under these statutes. It is a common experience that women with young children take passage in a common carrier vehicle accompanied by a colored nurse, and this nurse is always directed to the white compartment there to sit with the mother and children. Could it be tolerated that the twenty to forty white passengers in other seats in the same compartment making no objection or protest should be permitted to maintain suits against the carrier for that violation of the law, when not one of them took a single step or uttered a word in objection at the time? Upon such objection the conductor would immediately have removed the cause of the objection; but, there being no

objection uttered, the facts import consent, and there is no cause of action.

A question of more difficulty arises, however, in a case where the conductor, well knowing that a passenger is colored, specifically directs this passenger to take a seat immediately by the side of a white passenger in a white compartment, or specifically directs a white passenger to a seat beside a colored passenger in a colored compartment; the law operates equally in favor of colored passengers as well as white passengers. Conley v. Central Kentucky Traction Co., 152 Ky. 764, 154 S. W. 41. There the law has been violated and at least a nominal injury has been directly inflicted before the injured passenger has had an opportunity to object or protest; but if the passenger does not object or protest, he is still entitled to no more than nominal damages, and this is put upon the simple and universal principle that a person who is damaged or is about to be damaged by the act of another owes the duty incumbent upon all members of a governmental society to make all reasonable exertions and as promptly as reasonably possible to obviate or reduce his damages, and if he do not do so the avoidable consequences rest upon him and not upon another, although the other be the original wrongdoer.

So, in this case, although appellee was seated within less than three feet of the bus driver, when the colored passenger took a seat beside him, not a word of objection was uttered by appellee; he did not at once move to another seat which was available, and which certainly involved but a simple exertion, but he thence voluntarily rode along all the while accumulating, as he says, because of being seen riding with a negro, a sense of shame and humiliation, which he placed in his declaration as amounting to one thousand dollars in damages, but which the jury reduced to one hundred dollars.

We are of the opinion that, under the record as it now stands before us, the appellant was entitled to the instruc-

tion requested by it that appellee could recover only nominal damages. And while we are led to this conclusion upon applicable and well-established legal principles, we are strengthened therein out of consideration of the matter of maintaining so far as possible a dependable administration in the laws. If no protest or objection be required in such a case, the suit might be brought five years after the alleged injury, when no witness would be available who could recall the facts or any such facts because no attention was called to them at the time, and fabricated cases could be maintained without hope of successful defense.

There may be an occasional case, but which we must know would be rare, wherein the carrier's agent, because of personal malice or ill will or with some other conscious purpose to insult or humiliate or otherwise injure the particular passenger involved, has violated the law in such manner that for the reason stated the passenger would be entitled to recover punitive damages; or likewise, where the conduct of the carrier's agent has been so utterly without excuse in or for the violation, or has been so contemptuous of his duties under the law as to evidence a negligence so gross and extreme as to amount to a conscious purpose to willfully injure the particular passenger, these would be cases for the infliction of punitive damages. What we have above said does not deal with that sort of case. When a case of that kind is presented to us, supported by testimony which well shows the case to be genuine and well sustained upon the facts, we will deal with that case as it may then appear to us to be proper. We have no such case as that before us under the present record.

Reversed and remanded.